1

2

3              UNITED STATES DISTRICT COURT

4              NORTHERN DISTRICT OF CALIFORNIA

5

6

7    JAIME LEDESMA ZEPEDA,

8                Petitioner,              No. C 03-5668 PJH (PR)

9          v.                             **ORDER DENYING PETITION
                                          FOR WRIT OF HABEAS
10   W. J. SULLIVAN, Warden, and JAMES    CORPUS**
     E. TILTON, Secretary, Department of
11   Corrections and Rehabilitation,

12              Respondents.
     _____/
13

14         This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

15   2254.  The court ordered respondent to show cause why the writ should not be granted.

16   Respondent has filed an answer and a memorandum of points and authorities in support of

17   it, and has lodged exhibits with the court.  Petitioner has responded with a traverse and has

18   filed several motions.  The motions and the petition are now before the court for ruling.

19                              **DISCUSSION**

20   **A.    Petitioner's Motions**

21         Petitioner has moved to substitute as respondents the current warden of his prison,

22   W. J. Sullivan, and the Secretary of the Department of Corrections and Rehabilitation,

23   James E. Tilton.  The motion will be granted.  *See* Fed. R.Civ.P. 25(d).

24         Petitioner has also moved for an evidentiary hearing.  In considering whether an

25   evidentiary hearing may be held the court's first step is to ask whether the factual basis for

26   a claim was developed in state court.  *Williams (Michael) v. Taylor*, 529 U.S. 420, 431

27   (2000).  If a petitioner has developed the factual basis for his claims in state court, an

28   evidentiary hearing is of course not necessary because the evidence is already in the

United States District Court
For the Northern District of California

1   record.  The court will assume for purposes of this ruling that petitioner has not developed

2   the factual basis for his claims in state court.

3        If a petitioner has failed to develop the factual basis of a claim in state court

4   proceedings, an evidentiary hearing to allow him or her to do so can be held only if

5   petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that

6   the Supreme Court has made retroactive to cases on collateral review, or (b) a factual

7   predicate that could not have been previously discovered through the exercise of due

8   diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and

9   convincing evidence that but for constitutional error, no reasonable fact finder would have

10  found the applicant guilty of the underlying offense.  *See* 28 U.S.C. § 2254(e)(2).

11       Use of the words "failed to develop in state court" in the opening clause of §

12  2254(e)(2) "implies some lack of diligence."  *Williams (Michael)*, 529 U.S. at 432.  That is,

13  the provisions of § 2254(e)(2) do not apply at all if a petitioner has diligently sought to

14  develop the facts in state court, but through no fault of his or her own been unable to do so.

15  *Id.* at 435-36.  "Diligence will require in the usual case that the prisoner, at a minimum, seek

16  an evidentiary hearing in state court in the manner prescribed by state law."  *Id.* at 437.

17  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues

18  which a prisoner made insufficient effort to pursue in state proceedings.  Yet comity is not

19  served by saying a prisoner 'has failed to develop the factual basis of a claim' where he

20  was unable to develop his claim in state court despite diligent effort."  *Id.*

21       The burden of showing entitlement to an evidentiary hearing is on the movant, i.e.,

22  the petitioner.  *Speitzer v. Schomig*, 219 F.3d 639, 648-49 (7th Cir. 2000).

23       In short, if petitioner did not present in state court the facts he wishes to present

24  here, for instance by developing them in his state habeas proceedings, he must show

25  either that he diligently sought to do so or he must show that the exceptions to the §

26  2254(e)(2) bar on evidentiary hearings outlined above are applicable.  Although petitioner

27  here asserts that he tried to develop the facts in state court, he provides only the

28  conclusory allegation.  He thus has failed to carry his burden of showing that he diligently

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

1    attempted to develop the facts in state court, and he has not tried to show that the

2    exceptions of § 2254(e)(2) apply to him.  The motion for an evidentiary hearing will be

3    denied.

4         Finally, petitioner moves to expedite this decision.  In view of this order, the motion

5    will be denied as moot.

6    **B.    Merits**

7         **1.    Standard of Review**

8         A district court may not grant a petition challenging a state conviction or sentence on

9    the basis of a claim that was reviewed on the merits in state court unless the state court's

10   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

11   unreasonable application of, clearly established Federal law, as determined by the

12   Supreme Court of the United States; or (2) resulted in a decision that was based on an

13   unreasonable determination of the facts in light of the evidence presented in the State court

14   proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

15   mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-9 (2000),

16   while the second prong applies to decisions based on factual determinations, *Miller-El v.*

17   *Cockrell*, 537 U.S. 322, 339 (2003).

18        A state court decision is "contrary to" Supreme Court authority (that is, falls under

19   the first clause of § 2254(d)(1)) only if "the state court arrives at a conclusion opposite to

20   that reached by [the Supreme] Court on a question of law or if the state court decides a

21   case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

22   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

23   of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

24   identifies the governing legal principle from the Supreme Court's decisions but

25   "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

26   federal court on habeas review may not issue the writ "simply because that court concludes

27   in its independent judgment that the relevant state-court decision applied clearly

28   established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

United States District Court
For the Northern District of California

be "objectively unreasonable" to support granting the writ. *Id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 339. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.* Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 339; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

### 2. Procedural Background

Petitioner was convicted by a jury in Monterey County of first degree murder with an enhancement for the use of a firearm, and was sentenced to 50 years to life with the possibility of parole. *People v. Zepeda*, 87 Cal. App. 4th 1183, 1189 (2001)*; see* Cal. Penal Code §§ 187(a), 12022.53(d). He appealed his conviction to the California Court of Appeal, which upheld the conviction and sentence. *Id.* at 1216. That court also denied a contemporaneous state habeas petition which was considered with the direct appeal. *Id.* at 1190. The California Supreme Court denied review. Petitioner's subsequent habeas petitions in the state superior court, court of appeal, and supreme court were denied without opinion.

### 3. Factual Background

The Court of Appeal related the salient facts as follows:

> On March 4, 1999, defendant shot and killed 18-year-old George Ortiz in front of 1127 Pacific Avenue in Salinas. Defendant was associated with a Sureño gang, while the victim, Ortiz, was associated with a Norteño gang.

> Edward Hernandez lived at 1127 Pacific Avenue. On the day of the shooting, Ortiz had come over for a barbecue. At some point, Hernandez's nephew reported seeing someone in a hood across the street. Ortiz went to look.

United States District Court
For the Northern District of California

Maurice Williams saw Ortiz walking down the street.  He saw a Hispanic male wearing a blue Dallas Cowboys cap drive up in a green car.  The driver asked Ortiz "if he knew some guy."  Ortiz said he did not.

Williams asked Ortiz "who was that[?]"  Ortiz said he did not know.  The driver then backed up the green car and spoke to Ortiz again, asking him, "where are you from?"  The driver fired several shots at Ortiz and sped away.

Ortiz stumbled back to 1127 Pacific Avenue, where he fell facedown.  He had been struck by one of the bullets.  It had entered his chest and exited his back.  The bullet perforated his lung and heart, and it tore his aorta and esophagus.

Police discovered that the green car used in the shooting belonged to Ferris Ammadi.  Ammadi and defendant both resided in Amicus House, a drug and alcohol recovery center.  On the day of the shooting, Ammadi had given the car to defendant, who was going to detail it while Ammadi was at work.  Defendant had possession of the car from about 9:00 a.m. until 9:00 p.m.  When he returned the car to Ammadi, it had been detailed as promised.

On March 8, 1999 (four days after the shooting), the police examined Ammadi's car.  They found one shell casing inside the car and another under the hood.

On March 19, 1999, the police arrested defendant for a parole violation.  At the time, defendant was in his own car, a blue Mazda.  Inside the hood of the car, the police discovered a nine-millimeter semiautomatic handgun.  They found a blue Dallas Cowboys cap inside the car.  A newspaper article about the shooting was in the glove box.  When the police searched defendant's room at Amicus House, they discovered another newspaper article about the shooting in his dresser drawer.

Ballistics tests subsequently revealed that the shell casings found in Ammadi's car had come from the nine-millimeter handgun discovered in defendant's car.  Tests further revealed that the bullets found at the scene of the shooting had been fired from that gun.

On May 24, 1999, defendant was transported from the Santa Clara County Jail to the Monterey County Jail.  A wiretap had been installed on the telephone in the cell where defendant was to be housed.  That day, defendant called his girlfriend, Jackie Garcia, and instructed her to pick up the car "because you know there is something wrong with the motor . . . ."  He told her, "You have to get that shit out and fucking get it out of the car . . . ."  He also instructed her to get rid of his cap.  The following day, defendant gave similar instructions to Irma Garcia.  Defendant subsequently had another conversation with Jackie Garcia, telling her to get someone else to "pull that shit out of the motor."

Defendant was charged, by information, with murder. . . .

Defendant moved to suppress the evidence obtained via the wiretap in his jail cell.  (§ 1538.5.)  He argued that the district attorney's application for the wiretap did not provide the basis for the necessity requirements of California's wiretap statute (§ 629.52, subd. (d)) or the federal wiretap statute (18 U.S.C. § 2518(3)(c)).  The trial court denied the motion to suppress, finding that the wiretap application did meet the necessity requirement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The prosecution moved, *in limine*, to admit evidence that defendant had participated in a prior gang-related shooting. The prosecution argued the evidence was admissible to show motive and intent under Evidence Code section 1101, subdivision (b), and the trial court agreed.

The jury convicted defendant of first degree murder (§ 187) and found true the allegations of firearm use (§ 12022.5, subd. (a)(1)) and firearm discharge causing death (§ 12022.53, subd. (d)).

*Id.* at 1190-92.

### 3.    Claims Presented

As grounds for habeas relief, petitioner asserts that his trial counsel was ineffective for failing to: 1) assert police misconduct as grounds to suppress wiretap evidence; 2) attack the credibility and testimony of Maurice Williams and include certain jury instructions; 3) challenge petitioner's arrest as pretextual and raise the issue of delay in arraignment; 4) challenge the wiretap application under *Franks v. Delaware*, 438 U.S. 154 (1978); 5) assist petitioner in preparing and presenting a *Marsden* motion for new counsel; 6) procure an expert witness to rebut the testimony of the police's crime scene investigators; and 7) object to the wiretap on Fourth and Fifth Amendment grounds, and make a record as to the wiretap claim.

Before proceeding to each claim, it is important to note that petitioner's pleadings are unclear and convoluted, with several different lines of argument included under each subpart.  The court has endeavored to make sense of petitioner's arguments as best it can. The subsections below reflects petitioner's organization of his claims.

All of petitioner's claims are for ineffective assistance of counsel.  In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must first establish that counsel's performance was deficient: i.e. it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, petitioner must establish that he was prejudiced by counsel's deficient performance: i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in

United States District Court

For the Northern District of California

1  the outcome. *Id.* *Strickland* constitutes the overall legal standard to be applied throughout

2  this petitioner, as ineffective assistance of counsel forms the basis of each claim presented

3  here.

### a.   Police Misconduct

5  Petitioner first asserts that his counsel was constitutionally ineffective for failing to

6  adequately argue the motion to suppress the fruits of the wiretap.  Petitioner's lawyer filed a

7  motion to suppress based on federal law and the state wiretap statute, section 629 et seq.

8  of the California Penal Code.  Petitioner's attorney argued that the necessity requirement in

9  section 629 had not been met by the police, and that overall, the various statutory

10  requirements contained in the California and federal wiretapping statutes had been

11  disregarded.  Ex. A at 71, 75.[1]  Petitioner now argues that this strategy was flawed, and

12  that his lawyer would have won the motion to suppress if he had focused on the facts,

13  which petitioner asserts show police misconduct.

14  The Supreme Court refined the *Strickland* test in *Kimmelman v. Morrison*, by

15  tailoring it to circumstances where a Fourth Amendment claim is central to the claim of

16  ineffective assistance of counsel.  477 U.S. 365, 375 (1986). The Ninth Circuit succinctly

17  stated the modified test from *Kimmelman* in *Ortiz-Sandoval v. Clarke*: when the ineffective

18  assistance of counsel claim is "rooted in defense counsel's failure to litigate a Fourth

19  Amendment issue . . . petitioner must show that (1) the overlooked motion to suppress

20  would have been meritorious and (2) there is a reasonable probability that the jury would

21  have reached a different verdict absent the introduction of the unlawful evidence."  323

22  F.3d 1165, 1170 (2003).  In order to succeed on a Sixth Amendment claim, therefore,

23  petitioner must first show that the police misconduct argument would have succeeded.

24  Petitioner has not pointed out any Supreme Court cases holding that generalized

25  "police misconduct" can be a basis for suppression, and the court has found none, so

26  petitioner's claim must fail at the outset because the state appellate court's rejections of this

27  _____

28  [1]  All citations to "ex." are to the exhibits lodged with the court by respondent unless indicated otherwise.

United States District Court

For the Northern District of California

1   claim could not be contrary to, or an unreasonable application of, clearly-established United

2   States Supreme Court authority when there is no such clearly-established authority.  *See*

3   28 U.S.C. § 2254(d)(2) (standard).

4        Furthermore, as discussed below, petitioner has failed to show misconduct.  He

5   asserts that the police misconduct occurred in three distinct but related ways.

6                                    **i.     Setup**

7        First, petitioner contends that the police "set him up."  He relies on a sentence from

8   Detective Wynne's interview of petitioner's girlfriend, in which Wynne said "we kind of set

9   [petitioner] up . . . the day he was arrested we got all the stuff out of his car.  We knew

10  about everything going into [the wiretap]."  Pet., attached Ex. G.  The police had already

11  removed the incriminating evidence from petitioner's car, but were hoping that petitioner

12  would ask someone to dispose of the evidence, which is exactly what he did on the phone

13  from jail.  The only sense in which petitioner was "set up" was that the police did not tell him

14  what they had found in his car, so when he got to a phone he asked friends to get rid of the

15  incriminating items.  There is a sense in which the investigators "set up" petitioner, in the

16  same way that a police officer might pose as a prostitute or a seeker of drugs, but this is

17  not misconduct.  Rather, it is good police work.  There having been no misconduct,

18  petitioner's trial counsel did not act unreasonably in failing to challenge the wiretap on this

19  ground.

20                               **ii.     Fifth Amendment**

21       Petitioner also asserts that his lawyer should have objected to the wiretap on the

22  grounds that the police used it to circumvent petitioner's Fifth Amendment right against

23  compelled self-incrimination.  He asserts that the police knew he would invoke this right, so

24  used the wiretap to get around it.

25       The flaw in petitioner's argument is that his telephone calls were not coerced or in

26  any sense required by the authorities.  They were entirely "voluntary and compulsion-free."

27  *Zepeda*, 87 Cal. App. 4th at 1195 (quoting *People v. Webb*, 6 Cal. 4th 494, 526 (1993)).

28  No police officer forced him to use the phone or told him whom to call or what to say.

1    Petitioner's statements were clearly a product of free choice, since only he chose to

2    make a call and orchestrate the destruction of evidence from his jail cell.  As his statements

3    on the phone were entirely voluntary and not the product of custodial interrogation, his Fifth

4    Amendment rights were not violated.  Therefore, petitioner's lawyer was not ineffective for

5    failing to raise this issue.

6              **iii.   Necessity**

7    Lastly, petitioner asserts that his lawyer should have argued that the police

8    circumvented the wiretap statute's necessity requirement, constituting police misconduct,

9    thus requiring suppression of the taped statements.  Before trial, petitioner's counsel did

10   argue that the necessity requirement had not been met, so both the trial court and the

11   Court of Appeal dealt with the issue of necessity.  Petitioner's counsel did not base his

12   argument on police misconduct, but rather on broader constitutional arguments;

13   nonetheless, he did assert that the necessity requirement was not met.  Both courts,

14   however, found that the police had fully complied with the statute.

15   The evidence collected up to the time of the wiretapping was entirely circumstantial,

16   so the police needed to find a way to get the defendant to give up information.  There was

17   little prospect of the police learning about destruction or disposal of evidence, petitioner's

18   motive or gang affiliation, fabrication of alibis, or intimidation of witnesses without the

19   wiretap.  As the Monterey County District Attorney phrased it in his response to petitioner's

20   original motion to suppress, "there was only one person involved in the shooting, that being

21   [petitioner].  Any further information concerning [petitioner's] participation in the offense has

22   to come from [petitioner]."  Ex. A at 105.  The trial judge, in denying petitioner's motion to

23   suppress, found that if the police were required to interrogate petitioner before wiretapping

24   his phone, they would be forced to reveal certain pieces of evidence in order to induce him

25   to confess.  This tradeoff, the judge found, was unreasonable in this situation, and

26   therefore, the necessity requirement from the wiretap statute was fulfilled.  RT 20.

27   Petitioner asserts in his traverse that the police misconduct consisted of "misleading

28   information concerning the necessity requirement."  Pet. Trav. 3-4.  Whatever this might

9

**United States District Court**

For the Northern District of California

mean, the record indicates that the issue was fully briefed and that the judge made a reasonable ruling, based on the opinion of Detective Wynne that a normal interrogation would be pointless.  Wynne simply stated that in his opinion, an interrogation would not be useful.

Petitioner's counsel was not ineffective for failing to challenge the necessity of the wiretap by means of police misconduct, because there is no evidence of such misconduct, and counsel challenged the wiretap's necessity on other grounds.

### iv.   Conclusion

Petitioner has not shown that a motion to suppress based on police misconduct would have succeeded, so has failed to establish ineffective assistance of counsel as to this claim.

### b.   Examination of Maurice Williams and Jury Instructions

Petitioner's key claim here seems to be that his lawyer failed to properly challenge the trial testimony of Maurice Williams.  Williams' testimony was as follows: Williams had been walking towards the victim, Ortiz, on Pacific Avenue when a car drove up next to Ortiz.  Williams observed the driver of the car ask Ortiz a question, but Williams could not hear what it was.  Ortiz responded with a statement to the effect of "I don't know."  Ortiz then crossed the street, and the car once again drove up next to him.  Williams heard the driver ask Ortiz "where are you from?"  Ortiz did not respond, and Williams then heard several shots fired.  Williams ducked down until the car had departed the scene, and then tended to Ortiz.  At trial, Williams testified as to the color of the car, that the driver was wearing a Dallas Cowboys hat, and that the driver was a Hispanic male, but he did not identify petitioner in any way.  RT 792-810.

Petitioner's main argument seems to be that his attorney erred by not forcing the prosecution to satisfy the requirements of *United States v. Wade*, 388 U.S. 218 (1967). The question presented in *Wade* was whether identification of the defendant at trial is "to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment lineup conducted for identification purposes without notice to and in the

United States District Court

For the Northern District of California

1    absence of the accused's appointed counsel."  *Id.* at 219.  Petitioner asserts that Williams

2    had visited another witness, Veronica Amador, and informed her of the events he

3    witnessed, thus somehow making the identification of petitioner by Williams unreliable

4    under *Wade*.

5         However, there are several key differences between this case and *Wade*.  That case

6    concerned a lineup where a witness saw the defendant and then testified at trial.  *Id.*  The

7    defendant argued that the witness' trial identification of him was influenced by her lineup

8    identification of him, compounded by the fact that defendant's counsel was not present at

9    the lineup.  *Id.*  In this case not only is petitioner not complaining about lack of counsel at a

10   lineup, but also Williams never identified petitioner as the shooter, nor did he testify that the

11   shots came from the car.  *Wade* controls when a defendant does not have counsel at a

12   lineup, a witness identifies defendant from the lineup, and then the witness identities the

13   defendant at trial, because there is a chance of unreliable testimony.  However, that is not

14   the situation presented here, since Williams did not identify petitioner as the assailant.

15   Petitioner argues that "once a witness has picked out a suspect – whether influenced by

16   police in doing so or not – she [he] will not likely go back on her [his] word."  Pet. at 29.

17   Williams had not, however, "picked out a suspect;" he simply related the color of the car

18   and minimum physical characteristics of the driver.  There is a clear difference between

19   identifying someone in a police lineup and relating the facts of a car's color, the driver's

20   headwear, and the driver's apparent ethnicity.  Counsel's performance in failing to rely on

21   *Wade* was not deficient.

22        Petitioner also may be attempting to argue that counsel should have used Williams'

23   contact with Amador as impeachment.  Amador never testified at trial, and even if Williams

24   had told her what he had seen, such an admission would have done nothing to impeach

25   Williams.  The record indicates that the police spoke with Amador, who lived down the

26   street from Ortiz, and that her testimony did not materially vary from Williams' testimony.  In

27   short, there was no basis for impeachment to be derived from Amador or *Wade*.

28   Petitioner's counsel was not ineffective for failing to challenge Williams' testimony with his

1   having spoken to Amador.

2          Petitioner also seems to suggest a conspiracy by the police to coach Williams before

3   trial, alleging that the police made "secret" contact with Williams in order to dictate his

4   testimony to him.  Pet. at 30.  However, petitioner does not allege any facts, nor are any

5   contained in the record, which would support such an assertion.  Petitioner does state in his

6   traverse that "Williams is closely associated with the [personnel] of the Salinas Police

7   Department."  Pet. Trav. at 19.  There is also evidence in the record that Williams, at the

8   time of trial, was coaching football at a local high school with "Officer Rick Soratos," who

9   had been Williams' coach when he attended the same school.  RT 792-93.  Williams had

10  been doing this for about a month.  *Id.* at 793.  However, that is the extent of the evidence

11  regarding the alleged "conspiracy" against petitioner; his lawyer was not ineffective for

12  failing to challenge Williams with such an unfounded theory.

13         Petitioner also implies that the existence of the Cowboys hat was planted in

14  Williams' mind by the police.  Once again, there is nothing in the record to indicate this;

15  indeed, Williams' transcribed police interview and his trial testimony are entirely consistent.

16  Petitioner states that his counsel should have compelled Williams to "admit his secret

17  contact by police," but as there was no evidence of such contact, counsel's performance

18  did not fall below an objective standard for failing to challenge Williams' testimony with

19  these tenuous arguments.  Pet. at 32.

20         Lastly, petitioner asserts that his lawyer was ineffective for failing to request certain

21  jury instructions: he states that CALJIC Nos. 2.20, 2.22, and 2.91 should have been

22  requested.  However, the record indicates that the trial judge did use Nos. 2.20 and 2.22 in

23  his instructions to the jury.  CT 295, 299.  The third instruction, CALJIC 2.91, states that the

24  burden is on the prosecution to prove that the accused is the person who committed the

25  crime at issue.  Though this instruction was not included, a related instruction, CALJIC

26  2.90, was given to the jury; No. 2.90 is the general instruction regarding presumption of

27  innocence, reasonable doubt, and the burden of proof.

28         Under the second prong of *Strickland*, petitioner must show that there is a

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  reasonable probability that, but for counsel's unprofessional errors, the result of the

2  proceeding would have been different.  466 U.S. at 694.  CALJIC No. 2.91 is simply a more

3  specific version of the reasonable doubt standard from No. 2.90, as well as a more specific

4  version of the burden of proof standard  from No. 2.90.  There is little probability that when

5  instructed with No. 2.91, the jury would have not found petitioner guilty, because 2.90 and

6  2.91 are so closely related that the minor difference between them is not of sufficient

7  magnitude to trigger concern under *Strickland.*  Both instructions state that the burden is on

8  the People to prove guilt; implicit in No. 2.90 is the instruction that the People must prove

9  identity as well.  Finally, No. 2.91 is to be used when "the evidence of identification includes

10  the testimony of eyewitnesses."  CALJIC No. 2.91 (1996).  Though the eyewitnesses at

11  petitioner's trial were important to recount the events of that day, the crucial identification

12  evidence came from petitioner himself (the wiretap), as well as from physical evidence

13  collected from the car and petitioner's apartment.  Therefore, petitioner's counsel was not

14  ineffective for failing to include CALJIC No. 2.91 in the jury instructions.

15        Petitioner's counsel was not ineffective for failing to more strongly cross-examine

16  Maurice Williams, nor was he ineffective for failing to have CALJIC No. 2.91 included with

17  the jury instructions.  Petitioner is not entitled to relief on his second claim.

18        **c.    Arrest and Arraignment**

19        Petitioner next contends that 1) his arrest was a "pretext" for violating his Fourth

20  Amendment rights, 2) there was an unreasonable delay in arraignment, so 3) his lawyer

21  was constitutionally ineffective for failing to challenge the arrest and subsequent search on

22  these grounds.

23        The Supreme Court has held that the subjective intent of the officers should play no

24  part in a Fourth Amendment analysis.  In *United States v. Robinson*, the Court was faced

25  with a situation where a defendant challenged the search of his person after a traffic stop

26  as "pretextual."  414 U.S. 218, 220 (1973).  The Court held, however, that a traffic-violation

27  arrest would not be rendered invalid by the mere fact that it was "a pretext for a narcotics

28  search."  *Id.* at 221.  In other words, the intent of the arresting officer played no role in

13

United States District Court
For the Northern District of California

1   assessing whether the search was valid.  In *Scott v. United States*, the Court rejected the

2   contention that wiretap evidence should be excluded because the agents conducting the

3   tap had failed to make any effort to comply with the statutory requirement that unauthorized

4   acquisitions be minimized.  436 U.S. 128, 138 (1978).  The Court held that "subjective

5   intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."  *Id.*

6   The *Scott* Court continued, stating that "the fact that the officer does not have the state of

7   mind which is hypothecated by the reasons which provide the legal justification for the

8   officer's action does not invalidate the action taken as long as the circumstances, viewed

9   objectively, justify that action."  *Id.*  Finally, in *Whren v. United States*, the Court held that

10  "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis .

11  . . we have been unwilling to entertain Fourth Amendment challenges based on the actual

12  motivations of individual officers."  517 U.S. 806, 813 (1996).

13        In this case, the circumstances certainly justified the arrest based on a parole

14  violation.  Petitioner's parole officer, Charles Dennis, received a call from Tom Arnold, the

15  manager of the transitional home (Amicus House) where petitioner was living in San Jose.

16  Arnold told Dennis about petitioner's general non-compliance with the rules of the house

17  and that he wanted petitioner removed.  Specifically, Arnold told Dennis about petitioner's

18  unauthorized travel to Salinas and his falsifying of the sign-out sheet at the house.  Dennis

19  prepared the arrest warrant, noting "parole violations" and "evidence by Salinas P.D. that

20  [petitioner] was involved in a homicide."  Pet. Ex. A-9, p. 2.  Specifically, the terms of

21  petitioner's parole called for him not to enter Monterey County, which is exactly what he did

22  when he traveled to Salinas (the location of the murder).  Dennis was entirely within his

23  authority in issuing the warrant.  It was Dennis who approached the police about petitioner,

24  not vice versa.  Far from being "pretextual", Dennis' arrest stood on solid grounds.

25  Petitioner's lawyer was not ineffective for failing to challenge the arrest.

26        The subsequent searches of petitioner's car and room at Amicus House were also

27  consistent with the Fourth Amendment.  Since petitioner was on juvenile parole at the time

28  of the incident, his expectation of privacy under the Fourth Amendment was drastically

14

United States District Court

For the Northern District of California

1    reduced.  The California Supreme Court has upheld searches pursuant to the California

2    probation condition "whether the purpose of the search is to monitor the probationer or to

3    serve some other law enforcement purpose."  *People v. Woods*, 21 Cal. 4th 668, 681

4    (1999).  This practice of lowering the threshold for parole searches was upheld by the

5    United States Supreme Court in *United States v. Knights*, 534 U.S. 112, 121-22 (2001).

6    Therefore, this court may not engage in a discussion of the state of mind of Dennis at the

7    time he issued the arrest warrant, or speculate as to his motivation.  It only need be pointed

8    out that a search condition accompanied petitioner's parole: "you and your residence and

9    any property under your control may be searched without a warrant by a parole agent...or

10   any peace officer."  Pet. Ex. A-9, p. 14.  In light of the case law discussed above holding

11   that the intent of the arresting/searching officer is irrelevant, it is clear that the searches of

12   petitioner's car and room were entirely consistent with the terms of his parole, and thus with

13   the Constitution.  Petitioner's lawyer was not ineffective for failing to move to suppress on

14   these grounds.

15        Lastly, petitioner argues that his trial counsel should have challenged the delay in

16   arraignment, which he contends was six days.  Both federal and California law dictate that

17   a reasonable period between arrest and arraignment is forty-eight hours, and that any

18   delay beyond forty-eight hours is presumptively unreasonable.  *See County of Riverside v.*

19   *McLaughlin*, 500 U.S. 44, 56 (1991); Cal. Penal Code § 825.  Contrary to petitioner's

20   assertions, however, the record indicates that the time between his arrest and arraignment

21   was only two days.  Petitioner was originally arrested for the parole violation on March 19,

22   1999, and remained in custody in San Jose.  He was formally arrested and charged with

23   murder on March 24, and the arraignment for those charges occurred on March 26.  There

24   was no constitutional violation, and therefore petitioner's counsel was not ineffective for

25   failing to challenge the alleged delay in arraignment.

26        **d.    Evidentiary Hearing Under Franks v. Delaware**

27        Petitioner next contends that his attorney was ineffective for failing to move for a

28   hearing under *Franks v. Delaware*, which would have afforded petitioner the opportunity to

1   challenge the accuracy of the affidavit upon which the wiretap warrant was based.  438

2   U.S. 154 (1978).  In *Franks*, the Supreme Court held that there is a "presumption of validity

3   with respect to the affidavit supporting the search warrant."  *Id.* at 171.  However, the Court

4   set out the circumstances under which a defendant could challenge the affidavit:

5           Where the defendant makes a substantial preliminary showing that a false
        statement knowingly and intentionally, or with reckless disregard for the truth,
6       was included by the affiant in the warrant affidavit, and if the allegedly false
        statement is necessary to the finding of probable cause, the Fourth Amendment
7       requires that a hearing be held at the defendant's request.  In the event that at
        that hearing the allegation of perjury or reckless disregard is established by the
8       defendant by a preponderance of the evidence, and, with the affidavit's false
        material set to one side, the affidavit's remaining content is insufficient to
9       establish probable cause, the search warrant must be voided and the fruits of the
        search excluded to the same extent as if probable cause was lacking on the face
10      of the affidavit.

11  *Id.* at 155-56.

12          Therefore, petitioner must demonstrate that he (and his attorney) could have made a

13  "substantial" showing that a false statement was intentionally or recklessly included in

14  Detective Wynne's affidavit.  Petitioner first asserts that what an anonymous caller (who

15  turned out to be Tom Arnold, the transition house manager) told Detective Wynne was

16  unreliable hearsay.  However, this fact alone does not warrant a *Franks* hearing.  In *Franks*,

17  the Court stated that "truthful" does not mean that "every fact recited in the warrant affidavit

18  is necessarily correct, for probable cause may be founded upon hearsay and upon

19  information received from informants."  *Id.* at 165.  The Court found that the critical element

20  was that the "information put forth is believed or appropriately accepted by the affiant as

21  true."  *Id.*  Detective Wynne clearly believed the information he was receiving from the

22  anonymous source (Arnold), because he acted in accordance with it on several occasions,

23  and each time the information proved to be true.  For example, Arnold passed along

24  information about the make, model, and location of the car petitioner used during the

25  shooting.  Detective Wynne and his partner found the car and searched it, finding spent

26  shell casings that eventually were linked with petitioner's gun.  Wynne, the affiant, clearly

27  accepted Arnold's information as true, especially after he was able to verify certain parts of

28  the information before writing the affidavit and seeking the wiretap warrant.  *Franks*

16

1   mandates that petitioner must make "allegations of deliberate falsehoods or of reckless

2   disregard for the truth, and those allegations must be accompanied by an offer of proof."

3   *Id.* at 171.  Petitioner has not carried his burden with respect to the phone calls between

4   Wynne and Arnold, and he was not entitled to a *Franks* hearing on this point.

5          Petitioner also asserts that Arnold contradicted himself as to the time of petitioner's

6   arrival at the house, and thus Wynne's reliance on Arnold amounted to reckless disregard

7   for truth and necessitated a *Franks* hearing.  What Arnold told Wynne was that petitioner

8   had not been home at the time of the murder (mid-afternoon), and in fact had returned to

9   the house in the early evening.  Pet. Ex. A-6 at 40.  Petitioner challenges Wynne's reliance

10  on Arnold, because, petitioner asserts, Arnold could not have known what time petitioner

11  arrived at Amicus House.  However, Arnold told Wynne that petitioner was not home at 3

12  p.m., as the sign-out sheet indicated, a fact Arnold knew because he himself was still there.

13  Sometime thereafter, Arnold left the house and returned later; Arnold learned about

14  petitioner's true arrival time from the other residents of the house.  Once again, petitioner

15  has not made a showing that Wynne intentionally included falsehoods in his affidavit, nor

16  has he shown that Wynne recklessly disregarded the truth in pursuit of the warrant.  To the

17  contrary, under the "totality of the circumstances," Wynne clearly believed he had sufficient

18  probable cause for the wiretap and clearly trusted Arnold's credibility and information as the

19  manager of Amicus House.  *Illinois v. Gates,* 462 U.S. 213, 230-31 (1983).

20         Petitioner next contends that because no other residents of Amicus House were

21  interviewed, Wynne's affidavit was necessarily lacking, because the other residents might

22  have contradicted Arnold.  Petitioner asserts that with "due diligence," Wynne could have

23  discovered information from the other residents that would have undermined the finding of

24  probable cause.  Pet. at 47.  However, this was not Wynne's role in the process: he was

25  not tasked with thoroughly investigating the crime and putting together a strong package of

26  evidence.  Rather, his role was to collect evidence to show a "fair probability that

27  contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462

28  U.S. 213, 238 (1983).  Wynne was acting properly when he relied on the information from

United States District Court

For the Northern District of California

1    Arnold, the manager of Amicus House, and was under no obligation to absolutely verify

2    everything Arnold told him.  Rather, Wynne's duty was to establish a "fair probability," which

3    he successfully did.  Failing to interview all possible witnesses is not intentionally or

4    recklessly including a false statement in an affidavit supporting probable cause.

5            Lastly, petitioner argues that he was entitled to a *Franks* hearing because the

6    evidence he cites satisfies the second prong of the test, materiality.  It is true that without

7    Arnold's tips to the police, Wynne might not have been able to certify that he believed there

8    was probable cause for the wiretap warrant.  However, this point is irrelevant, as petitioner

9    has not carried his burden of making a substantial showing that Wynne knowingly or

10   recklessly included a false statement in his affidavit.  *Franks* makes it clear that the

11   showing of falsehood is a prerequisite to any analysis of materiality.  438 U.S. at 171-72.

12          In general, it seems as if petitioner is confusing the standard for obtaining a warrant,

13   probable cause, with the standard of proof at trial, beyond a reasonable doubt.  Petitioner

14   points out alleged flaws in the information Arnold gave to Wynne, flaws which might doom

15   Arnold as a trial witness under cross-examination.  However, the *Franks* court held that "the

16   deliberate falsity or reckless disregard whose impeachment is permitted today is only that

17   of the affiant, not of any nongovernmental informant."  438 U.S. at 171.  Wynne, looking at

18   the totality of the circumstances, believed there was probable cause to arrest petitioner

19   after taking Arnold's account as one piece of the puzzle.  Arnold eventually did not testify at

20   trial, which petitioner contends was due to police pressure.  Pet. Trav. at 41-42.  However,

21   even if petitioner had offered evidence of this pressure, a demand for a *Franks* hearing

22   would not have helped petitioner to compel Arnold's testimony.  Petitioner's counsel was

23   not ineffective for failing to demand a *Franks* hearing, because there was no evidence that

24   Wynne intentionally or recklessly included a false statement in his affidavit.

25          **e.      Marsden Motion**

26          Petitioner next asserts that his counsel was ineffective for failing to assist him in

27   obtaining new counsel pursuant to *People v. Marsden*, 2 Cal. 3d 118 (1970).  Petitioner

28   specifically states that 1) his attorney should have helped him prepare the motion and 2) it

18

United States District Court

For the Northern District of California

1    was constitutional error for the attorney to tell petitioner that the motion would not succeed.

2    There is no established Supreme Court precedent relating to this issue of informing the

3    client of his right to change lawyers and assisting him in that process, so the question is not

4    reviewable by this court.  However, *Strickland* still applies, and it is clear from the record

5    that petitioner's counsel was not ineffective.

6         Under California law, *Marsden* motions are designed to be made by defendants in

7    open court or with pre-printed forms available in jails, as petitioner well knew, since he

8    obtained a pre-printed form while incarcerated.  Pet. Ex. D at 181.  Indeed, the Ninth Circuit

9    has held that when a defendant voices a seemingly substantial complaint about counsel,

10   the trial judge should make a thorough inquiry into the reasons for the defendant's

11   dissatisfaction.  *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982).  However, the facts

12   indicate that petitioner never made such a motion, either orally or on paper.  His lawyer

13   correctly advised petitioner that it was petitioner's responsibility to pursue the motion (Pet.

14   Ex. D at 181-82); after that, if petitioner felt his lawyer was not providing effective

15   assistance, he should have notified the court.  If there was an error, it was petitioner's, not

16   his counsel's.

17        Petitioner also argues that his lawyer's statement that the motion would be denied

18   was the reason that he never filed the motion in the first place.  In other words, petitioner

19   believes his attorney discouraged him from notifying the court, which would constitute

20   ineffective assistance of counsel.  However, petitioner may not rely on his counsel's advice

21   to lift the burden from his own shoulders: petitioner, if he wanted new counsel, should have

22   made the *Marsden* motion.  Common sense dictates that if petitioner had lost faith in his

23   attorney, then he would have put little stock in the advice given to him by that attorney.  But

24   in this case, somehow the ineffective lawyer swayed his client to remain his client.  Rather

25   than pointing the finger elsewhere, petitioner should realize that only he had the power to

26   make the *Marsden* motion, and he chose not to do so.  There was no constitutional error

27   with respect to his attorney.

28   //

1

**f.     Failure to Hire an Expert Witness**

2      Petitioner next asserts that his counsel was ineffective for failing to hire an expert

3  witness to show that one of the bullet holes was older than the others, thus casting doubt

4  on the prosecution's theory that petitioner was the shooter.  Petitioner contends that the

5  police, in general, misinterpreted the crime scene and that a defense expert would have

6  exonerated petitioner.  By the end of his traverse, however, petitioner has shifted gears,

7  arguing that there was a general police conspiracy against him (Pet. Trav. 64) and that

8  Detective Wynne himself was the leader of an effort to cover up and destroy evidence (*Id.*

9  at 66-67).  The court will restrict itself to the only cognizable claim, that of ineffective

10  assistance of counsel for failure to call an expert witness.

11      "The failure to call an expert witness can be grounds for a successful ineffective

12  assistance of counsel claim."  *United States v. Wheeler*, 1996 U.S. App. LEXIS 8230 (9th

13  Cir. 1996), citing *United States v. Tarricone*, 996 F.2d 1414 (2d Cir. 1993).  As with any

14  *Strickland* claim, however, petitioner must show that his counsel's performance fell below

15  an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*,

16  466 U.S. at 687-88.  In this case, petitioner's counsel was not ineffective.

17      Petitioner asserts that his lawyer could have created reasonable doubt as to the

18  physical evidence collected at the crime scene if an expert had testified on behalf of the

19  defense.  Petitioner argues that a competent expert would have testified that not all the

20  bullet holes found at the scene were created at the same time or by the same gun.

21  However, petitioner's argument ignores the most glaring pieces of physical evidence: the

22  bullets, the shell casings, and the gun itself.  The prosecution's expert witness, a criminalist

23  for Santa Clara County, testified that the bullets found at the scene matched petitioner's

24  gun.  RT 1037.  The expert also testified that the shell casings found in petitioner's car

25  matched the gun.  *Id.* at 1030.  Even if petitioner's counsel had hired an expert, there was

26  no chance that the expert could undermine the persuasive evidence offered by the

27  prosecution's expert regarding the source of the bullets in the victim's yard.  Because the

28  bullets and shell casings were matched to petitioner's gun, his counsel's performance did

United States District Court

For the Northern District of California

1  not fall below an objective standard; it is entirely reasonable to assume that petitioner's

2  attorney did not see the point in contesting one bullet hole when the bullets themselves

3  were linked to his client.  Therefore, no Sixth Amendment violation occurred.

4      Petitioner's traverse begins on point, but soon departs tangentially into the strength

5  of the evidence against him, claiming, for example, that he could not have been guilty of the

6  murder if he were planning to attend the victim's funeral.  Pet. Trav. 57.  Petitioner seems

7  to have the mistaken belief that all he need show is reasonable doubt as to one piece of

8  evidence or one line of argument advanced by the prosecution or one statement made by

9  the police.  Indeed, he writes, "Petitioner submits that under the facts, Petitioner could have

10 established reasonable doubt to the charge of murder."  *Id.* at 70.  That is not the claim

11 presented in this petition, nor is it the standard for a valid habeas claim, where petitioner

12 must show constitutional error, that a state court acted unreasonably in denying his state

13 petitions, and as to most claims, prejudice.  Petitioner may not carry this burden with

14 general statements like "the crime scene pictures disprove Detective Wynne's testimony."

15 *Id.* at 58.

16     Petitioner's right to effective assistance of counsel was not violated when his

17 attorney chose not to hire an expert to challenge the police's interpretation of the crime

18 scene.

19     **g.    Failure to Challenge the Wiretap on Constitutional Grounds**

20     Petitioner lastly argues that his lawyer was ineffective for failing to challenge the

21 wiretap on Fourth and Fifth Amendment grounds.

22     The only reference he makes to a Fifth Amendment right in this section of his

23 petition is his reference to due process:  "Petitioner was denied due process of law at trial

24 and should be allowed vindication of his constitutional violations."  Pet. 62.  An application

25 for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a

26 judgment of a state court must "specify all the grounds for relief which are available to the

27 petitioner ... and shall set forth in summary form the facts supporting each of the grounds

28 thus specified."  Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

United States District Court

For the Northern District of California

1  "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a

2  'real possibility of constitutional error.'"  Rule 4 Advisory Committee Notes (quoting *Aubut* v.

3  Maine, 431 F.2d 688, 689 (1st Cir. 1970).  Petitioner has failed to state facts pointing to a

4  "real possibility of constitutional error" as to his possible due process claim, so this

5  discussion is limited to his Fourth Amendment claims.

6       The California Court of Appeal dealt directly with these issues, as opposed to

7  through the lens of an ineffective assistance claim, and held that petitioner's Fourth

8  Amendment rights were not violated because he had no reasonable expectation of privacy

9  in his jail cell.  *People v. Zepeda*, 87 Cal. App. 4th 1183, 1194 (2001).

10      In *United States v. Van Poyck*, the Ninth Circuit was faced with a pre-trial prisoner

11 who challenged a wiretap of his outgoing phone calls from the Metropolitan Detention

12 Center in Los Angeles, much as petitioner has done here.  77 F.3d 285 (9th Cir. 1996).

13 The court held that "even if [the accused] believed that his calls were private, no prisoner

14 should reasonably expect privacy in his outbound telephone calls.  Although prisoners do

15 not forfeit all their privacy rights at the jailhouse steps..., they do have those rights severely

16 curtailed."  *Id.* at 291.  The court then went on to cite several examples of prisoners having

17 no expectation of privacy while incarcerated, no matter their trial status: *Hudson v. Palmer*,

18 468 U.S. 517 (1984), held that a prisoner had no reasonable expectation of privacy in his

19 prison cell; *Lanza v. New York*, 370 U.S. 139 (1962), held that prisoners had no reasonable

20 expectation of privacy in public jail visiting rooms; and *United States v. Hitchcock*, 467 F.2d

21 1107 (9th Cir. 1972), held that a prisoner had no reasonable expectation of privacy in his

22 cell.  Based on this case law, it is clear that petitioner's challenge to the wiretap would not

23 have succeeded; therefore, his counsel was not ineffective for failing to challenge it on

24 those grounds.

25      Finally, petitioner briefly argues that his counsel was ineffective for failing to make an

26 adequate record of the constitutional arguments for the motion to suppress.  As such,

27 petitioner asserts, the Court of Appeal and subsequent courts did not have the complete

28 picture with regard to the violation of petitioner's Fourth Amendment rights.  However,

22

petitioner has made no showing of prejudice, as required by *Strickland*, and the Court of Appeal fully adjudicated this issue on direct appeal. *Strickland*, 466 U.S. at 694; *People v. Zepeda*, 89 Cal. App. 4th at 1194. Therefore, petitioner's counsel was not ineffective. Petitioner's final claim must fail.

## CONCLUSION

Petitioner's motion to substitute parties (document number 32 on the docket) is **GRANTED**. W. J. Sullivan, Warden, and James E. Tilton, Secretary, Department of Corrections and Rehabilitation, are substituted as respondents. Petitioner's motion for an evidentiary hearing (document number 33) is **DENIED** for the reasons set out above.

The petition for a writ of habeas corpus is **DENIED**. Petitioner's motion to expedite a decision (document number 36) is **DENIED** as moot. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  August 20, 2007.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.03\ZEPEDA668.RUL.wpd

United States District Court
For the Northern District of California

23